IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES W. TANNEHILL and     :
ROBYN L. TANNEHILL,     :
     Plaintiffs,     :
     :
vs.     :     CIVIL ACTION 20-0105-TFM-C
     :
ROBERT L. WILKIE, SECRETARY,     :
U.S. DEPARTMENT of VETERANS     :
AFFAIRS, et al.     :
     Defendants.     :
     :

## **REPORT & RECOMMENDATION**

Plaintiffs filed this action against seven defendants on February 21, 2020

asserting multiple claims against the defendants in a lengthy complaint, totaling

122 pages and seven causes of action.[1] (Doc. 1). In response, all defendants have

---

[1] Plaintiffs were advised by the Court that their Complaint was a "shotgun" pleading, asserting multiple claims against multiple parties, lacking clarity and specification. (Doc. 52). Plaintiffs were also given notice of pleading insufficiencies of their claims through the defendants' motions to dismiss. Accordingly, Plaintiffs were granted an opportunity to file an amended Complaint to cure the pleading deficiencies. The Court informed Plaintiffs of the necessity of compliance with S.D. Ala.CivLR 15 and the Federal Rules of Civil Procedure in the filing of the Motion for Leave to Amend, namely the need to file the proposed amended complaint with the Motion for Leave to Amend. (Doc. 55). Thereafter, Plaintiffs were granted two extensions (July 17, 2020 and August 3, 2020) to file their motion. (Docs. 56, 61, 62). On August 3, 2020, Plaintiffs filed a pleading titled "Obstructed Motion to Dismiss . . . ", in which Plaintiffs requested leave of Court to (1) Dismiss all pending claims against Wilkie, Secretary, U.S. Department of Veterans Affairs, Brewster and Associates, L.L.C. and M&T Bank, (2) amend the Complaint by complete revision to conform to the Court's and Eleventh Circuit's pleading standards, and (3) obtain legal counsel. (*See* Doc. 64 at 8, 10).

Plaintiffs' Obstructed Motion to Dismiss, construed as Plaintiffs' Motion for Leave to Amend Complaint, was denied by the Court for Plaintiffs' continued failure to attach a copy of the proposed amended complaint, in compliance with CivLR 15 and Fed. R. Civ. P. Rule 15 pursuant to the Court's direction. (*See* Docs. 56, 62). Additionally, the Court found that Plaintiffs have not attempted to cure this procedural defect any time thereafter. Since the filing of this motion, Plaintiffs have not filed a proposed amended complaint, nor have they advised of the retention of counsel.

filed motions to dismiss those claims, (Docs. 5, 9, 12, 21, 22, 41), and Plaintiffs have responded to the motions of the Brewster and Associates, The Citizens Bank, and Kent and Sandra Frederic. (*See* Docs. 19, 20, 23, 25). Plaintiffs have also filed a Motion for Summary Judgment against Defendants Kent and Sandra Frederic and The Citizens Bank (Doc. 46), as well as a "Criminal Complaint" against Defendant Brewster (Doc. 45), to which Defendant Brewster has moved to dismiss. (Doc. 48). These motions are now before the Court for consideration.

This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(1). Upon review of pleadings, and for the reasons stated herein, it is **RECOMMENDED** that:

1. **Robert L. Wilkie, Secretary, U.S. Department of Veterans Affairs' Motion to Dismiss** be **DENIED without prejudice**, and that the Plaintiffs be ordered to properly serve Defendant within 20 days after this Report and Recommendation becomes final or suffer dismissal of all claims against this Defendant. (Doc. 41)[2]

2. **Brewster & Associates' Motion to Dismiss** be **GRANTED,** and Defendant **DISMISSED** from this action**. (Doc. 5)**

3. **The Citizens Bank's Motion to Dismiss** be **GRANTED** as to the claims of Negligent Supervision, Negligent Hiring, Wantonness, Promissory Fraud, Breach of Fiduciary, Conspiracy to Defraud, and **DENIED as to the Breach of Contract claim**. (Doc. 9).

4. **Kent and Sandra Frederic's Motion to Dismiss** be **GRANTED,** thereby dismissing the claims of promissory fraud and conspiracy to defraud, with the **breach of contract claim remaining**. (Doc. 12).

---

[2] Hopefully, this time will be sufficient for Plaintiffs to finally obtain personal jurisdiction over the United States, if that is their intention. This period of time will include the 14 days following receipt of these recommendations for the filing of objections (see 28 U.S.C. § 636(b)(1)), the time taken by Judge Moorer to consider the Report and Recommendation, including any objections filed, and then an additional 20 days from the receipt of Judge Moorer's ruling on these recommendations. If the Plaintiffs are able to establish personal jurisdiction and desire to proceed against the United States, Defendant Wilkie will be allowed to refile the motion to dismiss once personal jurisdiction has been formally established.

5. **M&T Bank's Motion to Dismiss be GRANTED,** and Defendant be **DISMISSED** from this action. (Doc. 21).

6. **Lakeview Loan Servicing's Motion to Dismiss** be **GRANTED,** and Defendant be **DISMISSED** from this action. (Doc. 22).

7. **Plaintiffs' Motion for Summary Judgment** be **DENIED** at this time. (Doc. 46).

8. **Brewster & Associates' Motion to Dismiss or in the Alternative Strike the Criminal Complaint be GRANTED.** (Doc. 48).

## I.     Summary of Complaint Allegations.

James and Robyn Tannehill contracted with Kent and Sandra Frederic ("the Frederics") in October 2015 to purchase a newly constructed (never occupied) home built by McVay Construction Company, Inc. ("McVay") located at 7182 Maureen Circle, Spanish Fort, Alabama 36527 (the "Property", "home", or "real estate purchase"). The real estate purchase was financed through The Citizens Bank ("TCB") and guaranteed through the Department of Veteran's Affairs ("VA").

To secure the VA backed loan, Minimum Property Requirements had to be met, including appropriate safety, sanitation and structural requirements, which were to be inspected and confirmed by a VA vetted and approved appraiser. The VA loan approval also required a one-year builder's warranty be provided by the seller. Brewster and Associates ("Brewster"), was appointed by the VA to conduct the home appraisal inspection and found the real property to be in "C1" condition, meaning it was new and not previously occupied, and assigned the real property an estimated market value of $445,000 – identical to the Frederics' asking price. (Doc. 1 at 31). The Fredericks provided a Real Property Disclosure denying the existence of specific structural issues and contracted to provide a one-year

3

builder's warranty, in compliance with VA loan requirements. The Tannehills also obtained their own home inspection which found that the property was "satisfactory". (Doc. 1 at 26). On November 17, 2015, the Tannehills closed on the loan in TCB's name, guaranteed by the VA. Subsequently, on March 2, 2017, M&T Bank became Plaintiffs' mortgage servicing company, and on October 4, 2017, the Tannehills' mortgage note was assigned to Lakeview Loan Servicing ("Lakeview").

Approximately one month after closing on the home, in December 2015, the Tannehills noticed property grating and drainage defects, causing flooding and foundational issues to the property. A geotechnical engineering evaluation confirmed the property's retaining wall was not in compliance with county approved building codes, and (due to the home's construction on a steep hillside with inwardly graded lot) the property was subject to surface flooding from storm water and damage to the property. After experiencing the flooding and ponding of water on the property, the Tannehills obtained a copy of their closing file. Review of the closing documents revealed, *inter alia*, that many of the duplicates in the file were unsigned and missing from the file were VA Forms 26-1820 (Report and Certification of Loan Disbursement) and 26-1859 (Builder's Warranty), necessary for TCB to close and the VA to guarantee the loan. The Tannehills found they were without the contractually agreed upon One-Year Builder's Warranty and, instead, had a "bogus Limited New Home Warranty [which] had been inserted in their closing file" - in which McVay (a nonparty to the real estate purchase) claimed to have built the property for and sold to the Tannehills for valuable consideration. (Doc. 1 at 37). Without the Builder's Warranty, the Tannehills claimed they faced out of pocket expenses in excess of $40,000 to

reconstruct the elevation of the property or risk injury to themselves or others in the event of structural failure of the retaining wall. (*Id*. at 39).

The Tannehills sought remedy for their "irregular loan and property dilemma" through the VA in April 2016; however, the VA determined in July 2016 that the Tannehills' complaints did not meet the acceptance criteria for an Office of Inspector General case. (Doc. 1 at 40).

The Tannehills then filed an Administrative Federal Torts Claim Act (FTCA) Claim with the VA on March 29, 2017, asserting that the failure of the VA and its agents/employees to ensure that the minimum property requirements were met to ensure a VA loan (namely the failure to obtain a one-year builder's warranty and that the property be free from regular storm flooding) proximately caused them damage. On April 20, 2017, the Tannehills were informed through a conversation with VA investigator Bob Boulware that the best recourse for the Tannehills' claim was through the federal courts, rather than through a FTCA administrative VA claim. The Office of General Counsel, however, did not officially deny the administrative claim until January 4, 2018 (declaring that the complained of lenders were not employees of the government and the government is not liable for their conduct), with the appeal of General Counsel's decision denied on December 4, 2019 (finding no negligent or wrongful act or omission on the part of a VA employee). (Doc. 1 at 47).

In April 2017, the Tannehills advised not only the VA of irregularities and omissions in their loan but also the servicer of their mortgage, M&T Bank, and further provided notice that they were repudiating the loan and demanding a return of their down payment, as well as excusal from the remaining mortgage indebtedness. M&T Bank investigated the Tannehills allegations and found no

merit to the Tannehills' claims, and (after serving a Notice of Default of Mortgage on the Tannehills) Lakeview foreclosed on the Tannehills' property on February 21, 2018.[3]

The Tannehills filed this suit on February 21, 2020, against the Fredericks, TCB, Brewster, M&T Bank, Lakeview, and Wilkie, Secretary of VA for various claims related to the 2015 real estate sale. The crux of Plaintiffs' complaint is that the Purchase Agreement and Mortgage were knowingly breached prior to the closing date, causing Lakeview's acquired mortgage note to be null and void, resulting in damage to Plaintiffs and wrongful foreclosure of the property. The Plaintiffs further contend that the VA and its loan program participants engaged in a variety of irregular and criminal activities against the Tannehills. The Plaintiffs have asserted claims against the VA for violations of their First and Fifth Amendment rights under the United Stated Constitution, as well as claims for negligent supervision, negligent hiring, wantonness, and conspiracy to defraud pursuant to the Federal Tort Claims Act. (Doc. 1 at 57-58). Against the remaining defendants, the Plaintiffs have asserted claims of negligence, fraud, breach of contract, and wrongful foreclosure and seek compensatory damages, as well as declaratory and equitable relief. (*Id*. at 57-59).

## II. Discussion and Analysis.

Each named Defendant has filed a Motion to Dismiss (Docs. 5, 9, 12, 21, 22, 41), and Plaintiffs have responded to the motions of the Brewster, TCB, and the Frederics. (*See* Docs. 19, 20, 23, 25). Additionally, the Plaintiffs have filed a Motion for Summary Judgment against TCB and the Frederics (Doc. 46-47), as well as a

---

[3]     Plaintiffs' property (appraised at $415,000) was bought at non-judicial sale for approximately $324,000.  (Doc. 1 at 11).

"Criminal Complaint" against Defendant Brewster (Doc. 45), to which Brewster has filed a Motion to Dismiss or Strike. (Doc. 48). These motions are all currently pending before the Court, and each will be addressed in turn.

## A. Jurisdiction.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). The jurisdiction conferred upon federal courts by Article III, section 2 of the Constitution is codified in part in Title 28, section 1331 of the United States Code. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States", 28 U.S.C. § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a). "These jurisdictional grants are known as 'federal-question jurisdiction' and 'diversity jurisdiction,' respectively. Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which 'to vindicate federal rights,' whereas diversity jurisdiction provides 'a neutral forum' for parties from different States." *Home Depot U.S.A., Inc. v. Jackson*, __ U.S. __, 139 S. Ct. 1743, 1746, 204 L. Ed. 2d 34, 40-41 (2019) (citing *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. 28 USC § 1367(a).

Plaintiffs' claims against Defendant Wilkie arise from the granting of a VA housing loan guaranty. Such guaranties are addressed in Chapter 37 of Title 38, specifically Section 3703. Section 3720, which also lies within Chapter 37, provides that, "[n]otwithstanding the provisions of any other law, with respect to matters arising by reason of this chapter, the Secretary may ... sue and be sued in the Secretary's official capacity in any court of competent jurisdiction, State or Federal ...." 38 U.S.C.§ 3720(a)(1). "Such a sue-and be-sued clause serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government," *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435, 1440, 203 L. Ed. 2d 668 (2019), and courts have recognized that Section 3720(a)(1) thus serves to waive VA's sovereign immunity. *E.g., Smith v. Principi*, 281 F.3d 1384, 1388 (Fed. Cir. 2002); *Western Securities Co. v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir. 1991). Since Plaintiffs seek to sue the VA Secretary for negligent and wrongful acts of its employees, such claims fall under the Federal Tort Claims Act, 28 USC §§ 1346(b), 2671 et seq., which waives the government's immunity for claims based on the negligence of government employees. "Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. Unites States*, 508 U.S. 106, 113, 113 S. Ct. 1980. 124 L. Ed. 2d 21 (1993). Stated another way, the district court lacks subject matter jurisdiction over FTCA claims unless and until a claimant has exhausted his administrative remedies. *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008). To exhaust administrative remedies, "the claimant shall have first presented the claim to the appropriate Federal

agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).

Here, Plaintiffs have fully exhausted at least one of their asserted FTCA claims regarding the origination of their VA loan and mortgage. Therefore, this Court has "federal question" jurisdiction over the exhausted claim asserted against Wilkie, Secretary, United States Department of Veterans Affairs, and supplemental jurisdiction over the state law tort claims asserted against the remaining Defendants.[4]

**B. Motions to Dismiss.**

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's

---

[4] This Court does not have diversity jurisdiction over the action. 28 U.S.C. § 1332. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs, John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998). Review of the Plaintiffs' complaint evidences that the Plaintiffs are citizens of the State of Alabama, as are Defendants the Frederics, TCB, and Brewster. (Doc. 1 at 3). Accordingly, on the face of the pleading, there is a lack of complete diversity which would preclude the granting of subject matter jurisdiction based on diversity jurisdiction.

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id*. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id*.

"[U]nsupported conclusions of law or of mixed fact and law" will not defeat a Rule 12(b)(6) motion for dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court also observes that the statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant. *Tello v. Dean Witter Reynolds, Inc*., 410 F.3d 1275, 1292 (11th Cir. 2005). A plaintiff is not required to anticipate and negate an affirmative defense in the complaint. *La*

*Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted, however, if it is apparent from the face of the complaint that the claim is time-barred.  *Id*.

### 1.  <u>Robert Wilkie, Secretary, United States Department of Veterans Affairs' Motion to Dismiss (Doc. 41).</u>

Plaintiffs' complaint against Defendant Robert L. Wilkie, Secretary, U.S. Department of Veterans Affairs centers around the failure of VA officers to recognize "inadequacies" in Plaintiffs' submitted appraisal and closing documents in procurement of their VA backed home loan.  Plaintiffs also claim the VA's "lenderization plan" fails to comply with "[38 U.S.C.] § 512's requirement that delegations of authority and assignments of functions be confined by law to officers and employees of the VA", not lenders nor loan servicers. (Doc. 1 at 19). Plaintiffs have brought claims of First and Fifth Amendment violations and further allege claims of Negligent Supervision, Negligent Hiring and Wantonness, and Conspiracy to Defraud.  On May 20, 2020, the United States filed a motion to dismiss the claims against Defendant Wilkie, Secretary, United States Department of Veterans Affairs.  (Doc. 41).  To date, the Plaintiffs have not responded to the motion other than to exhibit a willingness to have these claims dismissed if they are allowed to amend their complaint.

Defendant VA has asserted the personal jurisdiction defense of insufficient service of process, pursuant to Rule 12(b)(5) of the Fed. R. Civ. P.; specifically, Defendant contends that Plaintiffs have failed to serve the U.S. Attorney General

and the U.S. Attorney, along with the Secretary, Veterans Affairs in compliance with FED. R. CIV. P. 4. (Doc. 41 at 21-22).[5]

Rule 4 of The Federal Rules of Civil Procedure governs the sufficiency of process. Rule 4(i) authorizes service on a United States agency or officer sued in an official capacity by sending a copy of the summons and complaint by registered or certified mail to the agency or the officer. Additionally, the party must also serve the United States itself. Rule 4(i)(1) "To serve the United States, a party must deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office." FED. R. CIV. P. 4(i)(1)(A). A party must also "send a copy of [the summons and complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C." FED. R. CIV. P. 4(i)(1)(B).

The record evidences that Plaintiffs filed suit against Robert L. Wilkie, Secretary, U.S. Department of Veterans Affairs, as well as six other defendants, on February 21, 2020. (Doc. 1). The record further shows that a summons was issued

---

[5] "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F. 2d 1313, 1317 (11th Cir. 1990). Therefore, where a court finds insufficient service, it is improper for the court to reach the merits of the case and to issue a dismissal with prejudice. *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182-83 (11th Cir. 2007) (per curiam) (citing Pardazi, 896 F.2d at 1317).

*Chilson v. Modly*, No. CV 19-00016-TFM-B, 2020 WL 1068861, at *2 (S.D. Ala. Feb. 12, 2020), *report and recommendation adopted as modified*, No. 1:19-CV-16-TFM-B, 2020 WL 1066991 (S.D. Ala. Mar. 5, 2020).

for Robert L. Wilkie, Secretary, U.S. Department of Veterans Affairs on February 21, 2020 (Doc. 2 at 11-12), as well as six other defendants.  Furthermore, on March 26, 2020, this Court's Clerk mailed to Plaintiffs two additional summonses, for the United States Attorney and the Unites States Attorney General.  The letter stated as follows:

> Dear Mr. and Mrs. Tannehill:
>
> Enclosed are processed summonses for the United States Attorney and the United States Attorney General, who need to be served with a copy of your complaint and the summons pursuant to F.R.Civ.P 4(i) since you are suing an Officer of the United States.  Please file completed proofs of service, see page 2, along with the U.S. Postal Service Domestic Return Receipts once you receive them back from the Post Office to show proof of service.

(Doc. 14-1).  The mailing included a Summons and Proof of Service for proper service of both the U.S. Attorney and the U.S. Attorney General.  (Doc. 14 at 1-4).  Subsequently, on March 30, 2020, an Assistant United States Attorney for the Southern District of Alabama again advised Plaintiffs by letter as to the appropriate and necessary means to effectuate proper service.  The letter stated:

> Dear Mr. and Mrs. Tannehill:
>
> Thank you for your correspondence dated March 23, 2020.  It appears that you served us a copy of the complaint by certified mail, along with copies of summonses issued to other parties in the case and the Secretary of the VA.  However, for service to be proper and complete, you must serve summonses issued to the U.S. Attorney's Office and the U.S. Attorney General.  It appears that the Court issued these summonses to you on Thursday, March 26.  Service of these summonses is necessary to start the clock against the United States to respond to the complaint.  Unfortunately, I cannot waive proper service on the United States.
>
> If you have any questions, please do not hesitate to contact me . . .

(Doc. 40-10). The letter is signed by Assistant United States Attorney Keith A. Jones, on behalf of the United States Attorney Richard W. Moore. (*Id*.).

On May 20, 2020, Defendant Wilkie moved to dismiss the claims against him, *inter alia*, for improper service pursuant to Rule 4. (Doc. 41 at 21). In carrying his burden of proof, *Hollander v. Wolf*, 09-80587-CIV, 2009 U.S. Dist. LEXIS 101446, *7, 2009 WL 3336012, *3 (S.D. Fla. Oct. 14, 2009), Defendant asserts that "Plaintiffs have ignored the Court's instruction and the undersigned's request for proper service. While this error is curable, given the other deficiencies in Plaintiffs' Complaint, Wilkie requests dismissal of the case in its entirety under Rule 12(b)(5)." (Doc. 41 at 21-22).

The Federal Rules of Civil Procedure provide that dismissal is warranted if service is not timely perfected within 90 days after the complaint is filed.

> Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Accordingly, Defendant has shown that Plaintiffs' suit was filed in February 2020, that neither the U.S. Attorney General or the U.S. Attorney for the Southern District of Alabama has been served with a summons and copy of the complaint, and over 300 days have passed since the filing of Plaintiffs' complaint. The burden now shifts to Plaintiffs to "demonstrate sufficient service of process by making a *prima facie* case of proper service", *Chilson v. Modly*, No. CV 19-0016-TFM-B, 2020 WL1068861, *2 (S.D. Ala. Feb. 12, 2020) (quoting *Hollander*, 2009 U.S. Dist. LEXIS at *7), or to show good cause for the failure to serve.

Courts have determined good cause exists where a *pros se* and *Informa pauperis* plaintiff relied on the U.S. Marshal to effectuate service pursuant to the court's order, and the Marshal failed to serve the defendant. *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284 (11th Cir. 2009). Good cause has been found to exist "when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Id*. (quoting *Lepone-Dempsey*, 476 F.3d 1277, 1281 (11th Cir. 2007) (citation and alteration omitted)). Furthermore, even if a plaintiff fails to show good cause exists,

> the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Lepone-Dempsey*, 476 F.3d at 1282. "Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Id*. Nonetheless, "Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause." *Horenkamp*, 402 F.3d at 1132.

*Id*. Courts have considered such factors as the running of the statute of limitations as a reason to extend the time for service. *Chapman v. Dunsford*, 2001 U.S. Dist. LEXIS 79832, *7-8 (S.D. Ala. July 21, 2011) (citing *Horenkamp*, 402 F.3d at 1131-32). "Nevertheless, '"the running of the statute of limitations does not require that a district court extend the time for service of process."'" *Id*. at *7 (quoting *Horenkamp* at 1133).

> In *Horenkamp* the court found that certain factors—the defendant's receipt of actual notice of the lawsuit (via a waiver request) within the 120-day period and formal service of process shortly after the service deadline expired— militated against dismissal and, therefore, supported the court's exercise of discretion not to dismiss. In contrast, Plaintiff in this case has offered nothing to justify a discretionary extension. *Cf. Zapata v. City of New York*, 502 F.3d 192, 198 (2nd Cir. 2007) ("plaintiff must ordinarily advance some colorable excuse for neglect" to justify a Rule 4(m) discretionary extension). There is no indication that either of these defendants was aware of this lawsuit

until April 2011, more than one year after it was filed. Plaintiff has not explained why the defendants could not have been located and served in a timely manner, nor has Plaintiff explained why he failed to request additional time for service. Plaintiff put his claims against these defendants at risk by waiting more than a year to perfect service of process. The Court declines to extend the time for service of process.

*Id*. at 7-8; *see also Cooley v. Ocwen Loan Servicing, LLC*, 729 F. App'x 677, 682 (11th Cir. 2018) (District court did not err when it dismissed the plaintiff's complaint where the plaintiff filed suit in June 2015, was put on notice of his failure to effectuate service in November 2015 with the defendant's motion to dismiss, requested additional time to perfect service, and still did not serve the defendant or allege that he attempted to over the next six months.); *Dixon v. Florida*, 2019 U.S. Dist. LEXIS 80357 (S.D. Fla. May 8, 2019) (Good cause was not found because the plaintiff had been reminded on several occasions of Rule 4's service requirement and failed to perfect service.) (citing to *Pruitt v. Charter Commc'ns*, No. 5:17-CV-1764-LCB, 2019 U.S. Dist. LEXIS 41077, 2019 WL 1199837, at *4 (N.D. Ala. Mar. 14, 2019) (dismissing *pro se* plaintiff's claims for failure to properly effect service of process where plaintiff had notice of service deficiencies but made no attempts to cure them)).

Here, the record evidences that Plaintiffs were provided with processed summonses for the U.S. Attorney General and U.S. Attorney for this court's district. The Plaintiffs were also provided with instructions regarding how and why the summonses and complaint must be served on the U.S. Attorney General and U.S. Attorney in March 2020. Yet, Plaintiffs failed to perfect service on the United States. The Plaintiffs were further instructed by the U.S. Attorney, appearing for Defendant Wilkie, of the Plaintiffs failure to properly serve the United States and the necessity of such service (in March 2020). Yet, Plaintiffs failed to perfect service.

The Plaintiffs were again given notice in May 2020, by the filing of Defendant Wilkie's Motion to Dismiss, of the gravity to properly serve the United States and, again, how to do so. Yet, Plaintiffs as of January 2021 have failed to perfect service. Notably, Plaintiffs have failed to respond to Defendant Wilkie's motion in any way, except by their contingent offer to dismiss Defendant Wilkie in exchange for the Court's granting of Plaintiffs' Motion for Leave to Amend their Complaint. (*See* Doc. 64). [6] Neither have the Plaintiffs contacted the court for instructions or requested additional time for service. Nor have the Plaintiffs put forth any evidence or argument as to why they have failed to perfect service on the United States or provided good cause for failure to properly serve the United States.

While taking note of the extreme deficiencies in the Plaintiffs' prosecution of this action, the undersigned recommends that the Court extend the Plaintiffs 20 days to perfect service on the United States, as it is likely that (at this stage) any dismissal without prejudice for failure to serve would effectually bar the Plaintiffs from pursuing their FTCA claim in the district court, based on the statute of limitations for the action.

> The FTCA "provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1629, 191 L. Ed. 2d 533 (2015) (quoting 28 U.S.C. § 2401(b)); *see also Sandoz v.*

---

[6] Plaintiffs have expressed a willingness to dismiss Defendant Wilkie from this action, conditional upon the Court's granting of Plaintiffs' Obstructed Motion to Dismiss. (Doc. 64). While the Court in no way considers Plaintiffs' motion as a notice of dismissal or a stipulation of dismissal, pursuant to Fed. R. Civ. P. 41(a), Plaintiffs' proposition does insinuate the Plaintiffs' inability to prove the needed elements of their cause of action, and/or that Plaintiffs have no other facts or allegations regarding their claim against Defendant Wilkie to submit to the Court, and/or Plaintiffs' desire to abandon their claims against Defendant Wilkie. Their request to amend is procedurally inadequate, however, leaving the Court and the parties in the dark as to the contents of an amended complaint.

*United States*, Civ. A. No. 15-3697, 2016 U.S. Dist. LEXIS 50915, 2016 WL 1545662, at *3 (E.D. La. Apr. 15, 2016) ("[T]ort claimants filing suit against the United States can be barred by the statute of limitations in two ways: (1) they can be barred if they do not file a claim with the appropriate federal agency within two years; or (2) they can be barred even if they do file a timely administrative claim, but fail to file a suit in district court within six months after the agency mails its notice of final denial of their claim.").

*Valentine v. Veterans Affairs*, No. 3:16-cv-1221-D-BN, 2016 U.S. Dist. LEXIS 107861, *7 (N.D. Tex. July 13, 2016). Here, Plaintiffs received their final administrative claim denial on December 4, 2019; thus, they were required to file this action by or before June 4, 2020. While the FTCA's statute of limitations is nonjurisdictional and subject to equitable tolling, *see Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 488 (5th Cir. 2016) (discussing *Wong*, 135 S. Ct. at 1638 (holding that the FTCA's statute of limitations was "non-jurisdictional and subject to equitable tolling")), the reasoning that would prompt recommending dismissal pursuant to Rule 4 at this time, without an extension, would likely be the same facts utilized to deny equitable tolling.

It is also noted that a portion of this action will clearly go to through the stages of discovery and the filing of dispositive motions. Thus, authorizing an additional opportunity, if Plaintiffs so choose, to serve the United States or suffer dismissal of all claims against Defendant Wilkie will not be unduly prejudicial or otherwise delay this action.

Accordingly, based on the Plaintiffs' pro se status, the effectual bar to refiling against this Defendant and the lack of prejudice or undue delay in addressing the claims against Defendant Wilkie, the undersigned recommends that Defendant Wilkie, Secretary, United States Department of Veterans **Affairs' Motion to Dismiss be DENIED without prejudice**, and further that Plaintiffs be

ordered to serve Defendant Wilkie within 20 days of receiving a ruling on this Report and Recommendation or suffer dismissal of all claims against this Defendant.

Even though the recommendation is that this motion be denied at this time, Plaintiffs are given notice of both their burden to prove service on Defendant pursuant to FED R. CIV. P. 4(l), and of concerns regarding the validity of their claims against Defendant Wilkie, based on the Defendant's motion to dismiss.

First, it appears based on 5 U.S.C. app. § 6(a)(2) that Plaintiffs have no right to demand their complaint be investigated by the Inspector General; thus, there can be no constitutional violation, as alleged in the complaint. *See Voinche v. Fine*, CIV ACTION No. 07-0528, 2007 U.S. Dist. LEXIS 73908, *4 (W.D. La. July 25, 2007) ("[A] citizen has no right to demand that the Inspector General investigate every complaint that is filed."); *Temple Univ. v. Brown*, CIVIL ACTION No. 00-CV-1063, 2001 U.S. Dist. LEXIS 1937, *25 (E.D. Pa. Feb. 23, 2001) ("By the very use of the word 'judgment', this section expressly leaves any investigation by the IG to her discretion. . . . {And} leaves to the IG the determination of what is 'necessary or desirable.'"). Additionally, Plaintiffs' claim that "their due process right to an uncompromised FTCA Investigation" was violated (Doc. 1 at 44) appears in actuality to be an allegation that the VA failed to properly investigate their administrative claim, rather than a due process claim. Such a claim must be presented to the relevant agency for review, prior to bringing it to this court, *Casella v. United States*, 642 F. App'x 54, 56-57 (2nd Cir. 2016) (citing *Wilkie v. Rob*bins, 551 U.S. 537, 550, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) (holding plaintiff had an administrative, and ultimate judicial, process for his complaints)), and the record evidences Plaintiffs have failed to timely present this specific claim to the

VA in an administrative claim or appeal; thus, it is not exhausted and is not reviewable by this court.

Second, as to the exhausted claim regarding negligence in the loan origination, alleged inaccuracies of VA documents, and VA loan approval without the execution of VA Form 26-1820 and builder's warranty, the Defendant has shown that Congress specifically created a system that allowed for VA home loans to be "automatically guaranteed" when made by lenders who meet the criteria described under 38 U.S.C. § 3702(d),[7] and it is undisputed that TCB was an authorized lender per § 3702(d). Thus, the burden shifts to Plaintiffs to show that Defendant owed a duty to personally review submitted loan documents prior to the closing of their home loan. Given that Plaintiffs have failed to respond to Defendant's motion, the question of whether or not the alleged improper submission of VA forms was the proximate cause of Plaintiffs' harm remains unsupported. Also, to the extent that Plaintiffs' allegations are an attempt to enforce internal VA administrative regulations, such claims are insufficient to support a negligence cause of action. *See Brown v. First Tennessee Bank Nat. Ass'n*, 753 F. Supp. 2d 1249, 1257 (N.D. Ga. 2009) ("The [VA] guidelines afford neither an

---

[7]    Defendant has presented evidence that under chapter 37, title 38, U.S.C., Congress has legislated, *inter alia*, the eligibility requirements of veterans to obtain a home loan backed by the VA, as well as the qualifications of lenders to make loans, the minimum property requirements for receiving a loan, and designed a system by which private appraisers provide appraisals to assess the reasonable value of the property to be guaranteed by the VA. (Doc. 41 at 4). Specifically, Defendant contends that Congress created a system, by enacting § 3731(f), by which appraisal reports "would be received and reviewed by approved lenders without VA staff involvement" to reduce government-imposed delays and more prudently use taxpayer funds by relying on certain private lenders and appraisers to perform valuation and origination functions. (Doc. 41 at 19; citing H. Rpt. No. 100-257, pg. 18 (1987)). Congress further established that oversight of the program would be through random sampling, "foreclos[ing] any claim based on a theory that VA has a duty to review every appraisal, catch every potential error, and be held liable in tort anytime a borrower's expectations are not satisfied." (*Id.*).

express nor an implied private right of action to veteran-borrowers."). Furthermore, Plaintiffs' claims of conspiracy to defraud, an intentional tort, are excluded from review pursuant to 28 USC § 2680(h),[8] and Plaintiffs have failed to establish the necessary elements of the claim.

Accordingly, if the District Judge exercises his discretion to authorize that Plaintiffs be given one last chance to formally serve the United States and thereby obtain jurisdiction over Defendant Wilkie, that will not prevent this Defendant from refiling a motion to dismiss going to the merits of these claims at the pleading stage. Upon completion of these procedural requirements to establish personal jurisdiction over Defendant Wilkie, Plaintiffs will continue to face a most difficult burden to rebut such a motion based on the current record.

Should the claims against Defendant Wilkie's be dismissed from the suit for failure of service or the granting of a newly-filed motion to dismiss, the Court will be obliged to return to its jurisdictional analysis to determine whether or not to exercise supplemental jurisdiction over any remaining claims. *See* 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental

---

[8] "Any claim arising out of . . . misrepresentation, deceit, or interference with contract rights" is not included in the "Sue and be sued" clause of 38 USC § 3720(a)(1). This would include claims of fraud. *See Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988) (The elements of a fraud claim under Alabama law are "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation."); *see also Duncan v. Icenogle*, 873 F. Supp. 579, 582 (M.D. Ala. 1994) (In Alabama, "actionable fraud . . . pivots on the existence of a misrepresented material fact.") (citing *Voyager v. Guaranty Insurance Co. v. Brown*, 631 So. 2d 848, 850 (Ala. 1993)). The Eleventh Circuit has reasoned if a cause of action "arises out of" an excepted cause of action, then it is barred by § 2680(h). *See Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986); *McClain-Leazure v. Berryhill*, 2108 U.S. Dist. LEXIS 81496 (S.D. Ala. May 15, 2018). Therefore, claims for conspiracy to defraud arise out of claims of fraud and are excluded under §2680(h). *Cf., Hanley v. City of Houston*, Civil Action No. H-05-4370, 2006 U.S. Dist. LEXIS 106796, *14-15 (S.D. Tex. Apr. 21, 2006) (Court barred conspiracy to defraud claim under § 2680(h) stating, "Plaintiff cannot prove a conspiracy to defraud claim without also proving the underlying fraud claim.").

jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction").

## 2. **Remaining Defendants' Motions to Dismiss**

As to the remaining defendants, Plaintiffs have alleged a variety of state law tort claims related to their October 2015 real estate purchase, including:

- Negligent Supervision, Negligent Hiring, and Wantonness, against TCB;
- Promissory Fraud and Breach of Contract, against the Fredericks, TCB, and Lakeview;
- Breach of Fiduciary, against TCB and Lakeview;
- Conspiracy to Defraud, against all Defendants;
- Third-party Breach of Contract, Negligence, Wantonness and Deceit, against Brewster; and
- Wrongful Foreclosure, against M&T Bank and Lakeview

In response, the defendants have filed motions to dismiss the claims against them and have raised the defense that many of the tort claims are time barred.

Under Alabama law, the statute of limitations for claims of negligence, wantonness, and breach of fiduciary duty is two (2) years. ALA. CODE 1975 § 6-2-38. The statute of limitations for these actions begins to run from the time the Plaintiffs' cause of action accrues and there is no "discovery rule" that would toll the running of the statute of limitations from the time the cause of action was "discovered" by the Plaintiffs. *Singer Asset Finance Co., LLC v. Connecticut General Life Ins. Co.*, 975 So.2d 375, 382 (Ala. Civ. App. 2007). The limitations period for fraud or deceit is two (2) years, but the statute of limitations begins to run once the aggrieved party discovers the fact constituting the fraud. *Dickenson v. Land Developers Construction Co.*, 882 So. 2d 291, 298 (Ala. 2003). The "discovery" of fraud may be through actual awareness or by "becoming privy to facts that would

provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud." *Id*. Causes of action for breach of contract, however, have a statutory limitations period of six (6) years in Alabama, ALA. CODE 1975 § 6-2-34, and accrue when the contract is breached. *AC, Inc. v. Baker*, 622 So. 2d 331 (Ala. 1993).

At its core, Plaintiffs' claims against the Frederics, Brewster, TCB, M&T Bank, and Lakeview center on Brewster's failure to identify a drainage problem or structural issues to the retaining wall; the Frederics' failure to provide the promised type of warranty; TCB's failure to ensure the proper warranty was provided and filed, and the Frederics' and McVay's (a nonparty to this action) failure to repair the faulty drainage. These actions were all known to the Tannehills as early as December 2015 and as late as April 26, 2016, when Plaintiffs sought administrative remedies with the Department of Veterans Affairs. Accordingly, the tort claims against these defendants accrued in 2016, at the latest, but were not filed until 2020. Consequently, the breach of contract claims are timely, but the claims of negligence, wantonness, and breach of fiduciary claims against these Defendants are time barred, and Plaintiffs do not dispute this. Instead, Plaintiffs request that the time bar be equitably tolled due to deliberate actions of the VA in delaying its ruling on their filed administrative claim "in order to exhaust the two-year statute of limitations for torts and frauds known to have occurred in The Tannehills loan matter." (Doc. 1 at 47). The Court, however, finds that equitable tolling is not appropriate in this action.

"Equitable tolling is a form of extraordinary relief that courts have extended only sparingly." *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1197 (11th Cir. 2008); *see*

*also Wallace v. Kato*, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). In this Circuit, equitable tolling is appropriate only when a movant "untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. . . . The plaintiff bears the burden of showing that such extraordinary circumstances exist." *Bhd. of Locomotive Engineers*, 522 F.3d at 1197 (citations and internal quotation marks omitted); *see also Bray v. Bank of Am., N.A.*, 763 F. App'x 808, 811 (11th Cir. 2019) (noting plaintiff "failed to demonstrate that his untimely filing in this case was the result of extraordinary circumstances that were both out of his control and unavoidable through diligence."); *Horsley v. University of Alabama*, 564 F. App'x 1006, 1009 (11th Cir. 2014) (denying request for equitable tolling where plaintiff "asserted no facts in her complaint indicating that her untimely filing was the result of circumstances beyond her control and unavoidable even with diligence."); *Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007) (noting the court has defined "extraordinary circumstances" narrowly).

Here, the Tannehills have put forth no evidence that the untimely filing was beyond their control, only asserting that the VA intentionally delayed ruling on the filed administrative claims. As to the tort claims against the nongovernmental defendants, there is simply no indication that they were dependent upon the decision or adjudication of the VA claim or exhaustion of the same. Indeed, the claims asserted against TCB, Brewster, the Frederics, M&T, and Lakeview stand independently (in contract and tort) and could have been pursued regardless of VA liability and/or wrongdoing. As such, the applicable statutes of limitations are not tolled by the administrative proceedings. *Cf., Scott v. Transport America,*

*Inc.*, 89 F.Supp.3d 1275, 1285 (N.D. Ala. 2015) ("This court holds that, because the state law claims in this case are not Title VII claims, they are 'separate,' 'distinct,' and 'independent' of the Title VII claims. For that reason, the statutes of limitations applicable to those claims were not tolled by the Title VII administrative proceedings."); *Kelley v. Wal-Mart Stores East, LP*, 2013 U.S. Dist. LEXIS 22027, 2013 WL 608030 (S.D. Ala. Feb. 19, 2013) (finding statute of limitations was not tolled during the EEOC proceeding and that Plaintiff's state-law claims were time barred).

Additionally, the record is void of facts alleging or suggesting circumstances beyond the Plaintiffs' control or extraordinary conditions which prevented the filing of their suit within the statutorily designated time period. It is undisputed that Plaintiffs first became aware of flooding and drainage issues after heavy rains in December 2015. It is undisputed that the Plaintiffs knew in February 2016 that Brewster failed to discover the drainage issues and the property's vulnerability to flooding and that TCB was not taking responsibility for any contractual failure when it suggested that the Tannehills seek an attorney and a geoengineering evaluation. (Doc. 1 at 38). It is also undisputed that the Tannehills were aware of errors in their real estate contract and loan agreement as it related to the home warranty, home inspection, and home appraisal in April 2016 when they sought relief through the administrative channels of the VA. It is further undisputed that it was suggested to the Plaintiffs, on April 20, 2017, that the best course of action could be a suit in federal court, rather than an OIG case with the VA. (Doc. 1 at 41). With such knowledge, Plaintiffs did not file their claims until February 2020. The Tannehills have not made the requisite showing of extraordinary circumstances both beyond their control and unavoidable even

with diligence. No evidence has been presented to show that they were misled about the facts or had no way of discovering facts necessary for their claim(s). Instead, the Tannehills chose to pursue a claim through federal agency procedures during the time the statutes of limitations were running before ever attempting to initiate this present action. Nothing in these facts and circumstances justifies application of the extraordinary remedy of equitable tolling to the Tannehills' untimely filing, which they could have avoided.

Therefore, based on the Plaintiffs' Complaint and review of the record, the undersigned determines that the Plaintiffs' claims of negligence, wantonness, and breach of fiduciary duty related to the real estate purchase and loan origination are time-barred, and Plaintiffs are not entitled to equitable tolling. However, Plaintiffs breach of contract claims are deemed timely as they have been filed within the six-year limitations period, and the claims of fraud or deceit must be analyzed subject to the discovery rule. With focus on these legal standards, the undersigned turns to the Defendants' motions to dismiss.

a. Brewster & Associates' Motion to Dismiss (Doc. 5).

The Tannehills have alleged that Brewster is liable for conspiracy to defraud, third-party breach of contract, and negligence, wantoness and deceit. (Doc. 1 at 58). On March 13, 2020, Defendant Brewster filed a motion to dismiss the claims against it (Doc. 5), asserting the facts alleged do not state a cause of action and are barred under the applicable state of limitations. (Docs. 5, 24, 67). This matter has been thoroughly briefed, including two Responses in Opposition by the Plaintiffs

(Docs. 19, 25), Brewster's Reply in Opposition (Doc. 24), and Brewster's Supplement to its Motion to Dismiss. (Doc. 67).

The record reflects that the VA fee appraiser, Brewster, conducted an appraisal of the property at issue on October 29, 2015 for the VA lender, TCB. Plaintiffs appear to allege in their Complaint that they were damaged as a result of purchasing the property at issue for more than the value of the property. And, if Brewster had noted the water and foundational issues with the property, the Plaintiffs would not have bought the property and would not have lost money from the purchase of the property in November 2015. Thus, it is from Brewster's October 2015 property evaluation that Plaintiffs' claims originate. Given that this suit was not filed until February 21, 2020 (over 4 years after the appraisal was performed) the tortious claims of negligence, wantonness, and deceit related to the appraisal are barred by the statute of limitations and equitable tolling is not appropriate for the reasons previously discussed.

As to Plaintiffs' claim for third-party breach of contract, the undersigned finds it is timely under Alabama's six-year statute of limitations, but as plead, fails to state a cause of action. The Tannehills' complaint provides a conclusory allegation with rambling facts regarding this claim. Plaintiffs appear to allege that they were harmed as third-party beneficiaries to a contract breached by Brewster, presumably by Brewster's failure to notice and document the flooding and draining issues of the purchased property. As maintained by Defendant Brewster, to recover under a third-party beneficiary of a breach of contract claim, the Plaintiffs must prove the existence of a contract between Brewster and some other party, the intention of the contracting parties to confer a direct benefit on the Plaintiffs, as opposed to an incidental benefit, that the contract was breached, and

that the Plaintiffs were the intended beneficiaries of the contract. *Pope v. McCrory*, 575 So.2d 1097, 1100 (Ala. 1991). Plaintiffs have failed to carry this burden, in their complaint and two responses in opposition to this motion. Nor do the facts show that the Tannehills were the "direct" beneficiaries in any agreement between TCB and Brewster in providing the appraisal for VA loan requirements. *See Smith v. Equifax Service, Inc.*, 637 So. 2d 463, 466 (Ala. 1988) ("To have a right to maintain an action for breach of contract, the third party must directly, as opposed to indirectly or incidentally, benefit from the performance of the contract."); *Gay v. Broder*, 109 Cal. App. 3d 66 (1980) (Court determined VA loan applicant (who paid for the VA appraisal) was not a third-party beneficiary of the contract between the appraiser and the VA). Nor has Plaintiff alleged facts to support that Brewster breached any provisions of the agreement to conduct the property appraisal for the VA loan. Accordingly, Plaintiffs have failed to state a claim for third-party breach of contract.

Plaintiffs further allege that Brewster subsequently conspired to defraud them by colluding with VA Assistant Loan Officer Kathy Bernheim in September 2016. According to Plaintiffs, VA Assistant Loan Officer Kathy Bernheim removed and destroyed Plaintiffs' original appraisal report and invoice dated October 29, 2015 and replaced it with a fraudulent report obtained from Brewster on September 20, 2016. Plaintiffs allege Brewster (at the request of VA Assistant Loan Officer Kathy Bernheim) submitted a "re-invoice" of his original appraisal for the VA to use in its evaluation (and ultimate denial) of the Tannehills' administrative claim. Plaintiffs contend the re-invoice "misrepresent[ed] that the Property's condition and estimated value were identical to that as of his original report." (Doc. 19 at 6; Doc. 1 at 31-34). Plaintiffs allege Brewster's re-invoiced appraisal

removed "numerous errors" from the October 29, 2015 original appraisal and was used by the Director of the VA in ultimately denying their loan indebtedness, finding "no anomalies existed in the Tannehills' loan records." (Doc. 1 at 32; Doc. 19 at 5). In support of their claim, Plaintiffs have submitted photocopies of the September 20, 2016 re-invoiced appraisal. The photocopies however are blurry and illegible in parts; to the best the undersigned can discern, the re-invoice appears to report the market value of the property as $445,000 "as of 10/29/2015". (Doc. 1 at 33; Doc. 19 at 7-8). Plaintiffs' copies of the September 20, 2016 report also confirm Brewster found no "adverse conditions that affect the [livability], soundness or structural [integrity] of the property" as of September 20, 2016 (Doc. 19 at 8), while Plaintiffs have also presented photographs evidencing cracks in the retaining wall on or around September 20, 2016. The re-invoiced appraisal further states "[b]ased on a complete visual inspection of the interior and exterior areas of the subject property, . . ., my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $445,000 as of 10/2[]/2016, which is the date of inspection and the effective date of this appraisal." (Doc. 19 at 8; Doc. 1 at 33).

Like many of the asserted allegations, this claim is difficult to discern from Plaintiff's complaint due to its conclusory nature and vagueness, and Defendant Brewster has moved to have the claim dismissed for Plaintiffs' failure to plead sufficient factual detail to support the elements of a cause of action. (Doc. 5-1 at 10-11; Doc. 24 at 7-8).

A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means." *Drill Parts & Serv. Co. v. Joy Manufacturing Co.*, 619 So. 2d at 1290 (quoting *Nelson v. University of Alabama System*, 594 So. 2d 632, 634 (Ala. 1992), *cert.*

> *denied*, 506 U.S. 818, 113 S. Ct. 62, 121 L. Ed. 2d 30 (1992)). A civil
> conspiracy action focuses not on the conspiracy alleged, but on the
> wrong committed by virtue of the alleged conspiracy. *Sadie v. Martin*,
> 468 So. 2d 162, 165 (Ala. 1985). Conspiracy itself furnishes no civil
> cause of action. *Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991).
> Therefore, a conspiracy claim must fail if the underlying act itself
> would not support an action. *Id.*

*Triple J. Cattle v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993). "The existence of the

conspiracy must often be inferentially and circumstantially derived from the

character of the acts done, the relation of the parties, and other facts and

circumstances suggestive of concerted action. . . ." *O'Dell v. State*, 117 So. 2d 164,

168 (Ala. 1959).

> We acknowledge that a great quantum of detail may not be required
> to prove the formation of a conspiracy, and that because of its
> secretive nature proof of a conspiracy must often be inferentially and
> circumstantially derived from the character of the act done, *O'Dell v.
> State*, 270 Ala. 236, 117 So. 2d 164 (1959), but a plaintiff is not relieved
> of the burden of supplying at least sufficient evidence from which
> the factfinder can infer that a conspiracy existed. *See, e.g., Turner v.
> Peoples Bank of Pell City*, 378 So. 2d 706 (Ala. 1979). "It is only by
> looking to the conduct of the alleged conspirators during the
> progress of the conspiracy and the end result achieved that usually
> such a fact [a conspiracy] is established." *National Distillers &
> Chemical Corp. v. American Laubscher Corp.*, 338 So. 2d 1269, 1272 (Ala.
> 1976), quoting *Barber v. Stephenson*, 260 Ala. 151, 69 So. 2d 251 (1954).

*Scott v. Commonwealth Land Title Ins. Co.*, 518 So.2d 102, 104 (Ala. 1987).

Here, Defendant contends that Plaintiffs' claim is founded in the original

October 29, 2015 appraisal and is, thus, barred by the state of limitations.[9] (Doc. 24

at 2-3). However, Plaintiffs have put forth evidence that Brewster created a re-

invoiced appraisal on September 20, 2016, that falsely misrepresented the

---

[9]     Defendant Brewster further contends that Plaintiffs' claim is implausible because
Plaintiffs were damaged well before any alleged conspiracy was entered into by Brewster.
Specifically, Defendant contends any damage to Plaintiffs occurred at the time the
property at issue was purchased in November 2015, ten months before the alleged
conspiracy in September 2016.

condition of their property, and that the false report was relied upon and used by the VA to deny Plaintiffs' administrative claim. Plaintiffs further allege that they did not know Brewster submitted the September 20, 2016 re-invoiced appraisal until after the foreclosure of their loan in February 2018 when they received requested documents from the VA (Doc. 19 at 18), thus making their claim timely under Alabama's discovery rule – that is that the two-year statute of limitations for fraud or deceit does not begin to run "until the discovery by the aggrieved party of the fact constituting the fraud." *Dickinson v. Land Developers Construction Co.*, 882 So. 2d 291, 298 (Ala. 2003). While the undersigned agrees that Plaintiffs' claim is timely, it is found that Plaintiffs have failed to properly state a civil conspiracy claim.

Review of Plaintiffs' conspiracy claim reveals that it lacks sufficient evidence to infer a conspiracy or fraud existed. To start, Plaintiffs fail to show or allege the differences contained in the original October 2015 appraisal and the September 2016 appraisal. No facts have been put forth, only the conclusory allegation, that the re-invoiced appraisal "misrepresented" the condition of the property. Instead, taking Plaintiffs' allegation as true (that VA Officer Bernheim altered or destroyed documents from Plaintiffs' closing file), Plaintiffs have put forth no evidence to show how the re-invoiced appraisal reflected anything different from the original October 2015 appraisal submitted to TCB for VA loan approval. Nothing in the allegations presented lead the undersigned to find that Brewster (or the VA) was attempting to appraise the property or inspect the condition of the property as it existed in September of 2016. Rather, it appears that the re-invoice was intended to reflect the information originally contained in Brewster's October 2015 appraisal. Consequently, Plaintiffs have failed to carry

their burden to establish fraud or misrepresentation on the part of Brewster; thus, no conspiracy to defraud may be established. *Willis v. Parker*, 814 So. 2d 857, 867 (Ala. 2001) ("A conspiracy cannot exist in the absence of an underlying tort.").

Accordingly, the undersigned recommends that **Brewster & Associates' Motion to Dismiss** be **GRANTED**, and the claims of Negligence, Wantonness, and Deceit, as well as claims of Conspiracy to Defraud and Breach of Third-Party Contract, be **DISMISSED**. With no remaining claims against Brewster, it is recommended that Defendant Brewster & Associates be Dismissed from this action.

b. <u>The Citizen's Bank's Motion to Dismiss (Doc. 9).</u>

The Tannehills allege that TCB is liable for negligent supervision, negligent hiring, wantonness, promissory fraud, breach of fiduciary, conspiracy to defraud, and breach of contract for acts related to the purchase of real estate in 2015. Defendant TCB moved to dismiss the claims against it as time barred and/or for failure to state a claim (Doc. 9), and the Plaintiffs have responded in opposition to the motion (Docs. 10, 23).

The record evidences that on or about October 6, 2015, TCB received an executed loan application from the Plaintiffs for the purchase of the home owned by the Frederics. TCB, an authorized VA lender and program participant, processed the loan from the application date until closing, November 17, 2015. Following the closing of the loan, TCB's name and the servicing of the loan was

transferred from TCB to Fairway Wholesale Lending.[10]  Plaintiffs allege that TCB, as an authorized VA lender, was responsible for determining that the requirements for obtaining a VA guaranteed loan were met before closing on their home loan (including the necessary "minimum property requirements" and the proper construction warranty), but TCB failed to do so. (Doc. 1 at 21).  Specifically, Plaintiffs claim that TCB defaulted on the provisions contained in the Mortgage Rider requiring that the loan conform with the VA's minimum property requirements (set out in 38 U.S.C. § 3704) and that TCB breached the Mortgage Contract by refusing to sign VA Form 1820 at or prior to closing on the loan.  (Doc. 23 at 2-3).  Plaintiffs further allege that TCB conspired with the Frederics, McVay Construction Co. (a nonparty), and the Plaintiffs' realtor (a nonparty) to default on the agreed upon provision to provide the Tannehills a VA compliant one-year builders warranty "by creating a bogus and unenforceable document captioned 'Limited New Home Warranty' in which McVay (Not in privity of contract) falsely claimed to have built for and sold to the Tannehills the Property for good and valuable consideration."  (Doc. 1 at 26-27).  Plaintiffs claim, had TCB "not participated in the conspiracy to commit mortgage fraud the bogus warranty would have raised a red flag to [VA] Loan Officer Debra Gwaltney and/or Loan Processor, Debbie Beech, and the loan process terminated and the matter referred to the Alabama Attorney General as Residential Mortgage Fraud, . . . ."  (Doc. 1 at 27).  Thus, the basis of Plaintiffs' claims against TCB center around the origination of the home mortgage loan.

---

[10] Without trying to resolve what may be a disputed fact, it is simply noted that TCB asserts that Fairway Wholesale Lending, not TCB, served as the underwriter of the Plaintiffs' loan and made all underwriting decisions for Plaintiffs' loan, not TCB.

Taking Plaintiffs' Response in Opposition to TCB's Motion to Dismiss into account, the record evidences that all actions or inaction by Defendant TCB occurred in 2015 and relate specifically to the origination of the home mortgage loan and purchase of real property. Accordingly, the date of accrual for statutory filing limits is the date of closing, November 17, 2015. While Plaintiffs acknowledge the applicable statute of limitations, they request equitable tolling of the limitations periods. However, Plaintiffs have failed to provide any facts showing that the alleged tortious conduct of TCB occurred after the November 2015 closing or that it was discovered any later than February 2016, when Plaintiffs began to inquire about Brewster's failure to note the flooding and drainage issues of the mortgage property. Accordingly, as previously discussed, Plaintiffs claims for negligent supervision, negligent hiring, wantonness, promissory fraud, breach of fiduciary, and conspiracy to defraud are subject to Alabama's two-year statute of limitations, and Plaintiffs are not entitled to equitable tolling, as they have failed to allege the existence of extraordinary circumstances that were beyond their control and unavoidable even with diligence.

Plaintiffs further allege that TCB is liable for breach of contract, a timely claim under Alabama's six-year statute of limitations period. Ala. Code § 6-2-34(9).

TCB moves for dismissal of the breach of contract claim, arguing (1) it was not a party to the Purchase Agreement between the Plaintiffs and the Frederics, (2) that Plaintiff has failed to corroborate the claim that TCB failed to certify VA Form 26-1820, (3) that it was Plaintiffs who refused to sign the VA Form 26-1820, and (4) that any failure to certify VA Form 26-1820 did not cause harm to Plaintiffs because

the same information was contained on the executed VA Form 26-1820A. (Doc. 9 at 7-8).

Plaintiffs oppose TCB's motion and assert (1) that it is the Mortgage Contract (to which TCB and Plaintiffs were parties) that TCB breached by failing to sign the VA Form 26-1820 certifying, pursuant to 18 U.S.C. 1001 *et seq.*, that all statutory and regulatory requirements for a VA guarantee were met, and (2) there is evidence contained within a photocopy of VA Form 26-1820 that TCB's signature is missing. (Doc. 23 at 3-4). Plaintiffs expound that TBC was not present at the loan closing on November 17, 2015, but the Plaintiffs completed their contractual performance by signing the mortgage, while TCB failed to do so. (Doc. 1 at 29-31). Plaintiffs further contend they executed closing documents with the understanding that TCB would correct identified misstatements in the lending agreement and include a copy of the sales contract and VA's builder's warranty to the closing documents – but TCB failed to do so. (*Id*. at 34-36). The Plaintiffs thereby allege TCB failed to timely close the loan per VA requirements, causing the VA guaranty to be null and void and breaching the mortgage contract with the Plaintiffs. (*Id*. at 37-38).

> The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).

*Dupree v. PeoplesSouth Bank*, 1180095, 2020 Ala. LEXIS 69, *8 (Ala. May 8, 2020).

Plaintiffs have established that they entered a Mortgage agreement with TCB on November 17, 2015. It is undisputed that Plaintiffs fulfilled their obligation(s) under the Mortgage agreement by their signatures. However, the elements of TCB's nonperformance and damages are less obvious. Notably, it is unclear from the record whether or not VA Forms 26-1820 and 26-1820A are interchangeable (as alluded to by Defendant),[11] as neither party has attached full versions of the forms for comparison or statutes/regulations that instruct on the issue. However, Plaintiffs do contend that they executed the Mortgage at closing with the understanding that inaccuracies and incomplete entries on Form 26-1820 (a misrepresentation that the home to be purchased was "previously occupied" when it was "not previously occupied") would be cured by the absent lender, TCB. (Doc. 1 at 34-36). Plaintiffs assert that this inaccuracy allowed for the "bogus" home warranty to be included, thereby damaging Plaintiffs.

While it is an understatement to say that Plaintiffs' allegations are unclear, taking Plaintiffs allegations as true (that they only signed the Mortgage contract with TCB because there was an understanding that TCB would correct the "inaccuracies" in the agreement) it appears that Plaintiffs have "nudged [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The undersigned thus determines it is premature to dismiss *pro se* Plaintiffs' breach of contract claim against TCB.

Consequently, it is recommended that **TCB's Motion to Dismiss** be **GRANTED** as to the claims of negligent supervision, negligent hiring,

---

[11] VA Form 26-1820 is titled Report and Certification of Loan Disbursement and VA Form 26-1820A is titled HUD/VA Addendum to Uniform Residential Loan Application.

wantonness, promissory fraud, breach of fiduciary, conspiracy to defraud, as they are barred by the statute of limitations, and **DENIED as to the b**reach of contract claim**. (Doc. 9).

### c. The Frederics' Motion to Dismiss (Doc. 12).

Plaintiffs allege claims of promissory fraud, breach of contract, and conspiracy to defraud against the Frederics. On March 24, 2020, the Frederics Answered the suit (Doc. 11) and filed a motion to dismiss (Doc. 12), to which the Plaintiffs have responded in opposition (Doc. 20).

The Plaintiffs allege the Frederics made fraudulent promises during the course of the property sale,[12] and the Frederics' fraudulent intentions were discovered when the Frederics failed to respond to Plaintiffs request to provide warranty coverage "within the VA one-year period." (Doc 1 at 67; Doc. 12 at 3). Thus, the Plaintiffs assert that they learned of the fraudulent intent within one year of the finalization of the property sale, which would be (at the latest) November 17, 2016. Accordingly, the statute of limitations began to run on Plaintiffs' fraud claims at (or before) November 17, 2016. Consequently, the filing of the promissory fraud claim is time barred, as is the claim for conspiracy to defraud, as

---

[12]     The Plaintiffs claim that the Frederics "knew of defective, non-building code compliant grading and drainage conditions" prior to the sale of the real property but failed to disclose it. (Doc. 1 at 21). "Furthermore, [the Frederics] were aware that the structurally supportive retaining wall, over which the driveway traverses, had been constructed without a permit required for all such structures over 4-feet tall." (*Id*.). However, as inducement to purchase the property (namely, to ensure VA Minimum Property Requirements), "the Frederics updated and provided a copy of their Real Property Disclosure denying the existence of specific structural issues which the Plaintiffs relied upon to their detriment and damage." (*Id*. at 22).

both are governed by a two-year statute of limitation under Ala. Code §§ 6-2-38(l), 6-2-3.

The Plaintiffs also allege a breach of contract claim against the Frederics,[13] which is timely filed and was not included in the Frederics' motion to dismiss. Accordingly, it is recommended that the Frederics' Motion to Dismiss be **GRANTED,** thereby dismissing the claims of promissory fraud and conspiracy to defraud, with the breach of contract claim remaining.

### d. M&T Bank's Motion to Dismiss (Doc. 21).

Plaintiffs allege claims of Conspiracy to Defraud and Wrongful Foreclosure against M&T Bank. On April 2, 2020, M&T filed a Motion to Dismiss all claims. (Doc. 21). To date, Plaintiffs have failed to respond in opposition to the motion, and M&T has asked that the court take notice of Plaintiffs' nonresponse and grant Defendant's motion in its entirety.[14] (Doc. 53).

The record indicates that the Plaintiffs obtained a home loan from TCB on November 17, 2015 to finance their real estate purchase from the Frederics, which included a Mortgage. On March 2, 2017, M&T became the servicer of Plaintiffs'

---

[13] The Plaintiffs allege that as part of the contract to purchase the real property at issue, the Frederics amended (by handwritten entry) the Purchase Agreement to include a One-year Builders Warranty. (Doc. 1 at 23-25). However, the Plaintiffs later discovered that a "Limited New Home Warranty" was included in the home purchase records. (*Id*. at 27-29).

[14] Notably, Plaintiffs have agreed to a proposed dismissal of Defendant M&T, contingent upon the granting of Leave to Amend their Complaint. (*See* Doc. 64). Again, even though the Court does not recognize Plaintiffs' contingent offer to be a notice of dismissal or a stipulation of dismissal pursuant to Fed. R. Civ. P. Rule 41(a), it does indicate Plaintiffs' recognition that they are unable to prove the needed elements of their cause of action and/or that Plaintiffs have no other facts or allegations regarding their claims against Defendant M&T to submit to the Court.

Mortgage. On April 20, 2017, Plaintiffs sent correspondence to M&T Bank and to the United States Department of Veterans Affairs referencing "unmitigated irregularities, errors and omissions occurring in conjunction with" their VA home loan purchase. (Doc. 1 at 106). Namely, Plaintiffs described that their home purchase (secured by the Mortgage) was defective property, ineligible for VA securing due to the flooding and structural defects and improper warranty deed provided by sellers. Furthermore, Plaintiffs described their attempts to bring the issue to the attention of the VA, to remedy the issue through warranty and insurance claims, and eventually filed a FTCA administrative claim with the VA, while at all times making timely mortgage payments. The letter also provided notice that Plaintiffs were repudiating their VA loan and demanded a return of their down payment, as well as an excusal from the remaining mortgage indebtedness, due to the VA's errors. (*Id*. at 52-53, 106). Plaintiffs informed M&T of their intent to vacate the property and relinquish the property to the VA, stating:

> Borrowers will continue to make timely mortgage payments through May 2017 and vacate the property no later than May 21, 2017.

> You are requested to immediately arrange to recover the property effective June 1, 2017 with the understanding that:

>> This is an action which the VA, being aware of the underlying negligent and fraudulent elements, should have undertaken to undo on its own under existing statutory and legal authority and resources and failed to do.

>> This is repudiation of the entire corrupted VA loan process and mortgage in recognition of the Veterans Administration statutory responsibility to the public, the lender and the borrowers to act against its negligent employees, agents and fraud perpetrators to recover and reimburse the losses and forgive the illegitimate indebtedness incurred by those who acted in good faith to their extreme financial detriment.

> The action is not intended, nor should it be misinterpreted, to be deed-in-lieu of foreclosure or strategic foreclosure, both of which would reflect on the borrowers as being responsible for and defaulting on a legitimate mortgage indebtedness – which is not the instant case.

(Doc. 1 at 108).

M&T responded by letter dated June 6, 2017, claiming to have investigated Plaintiffs' concerns regarding their mortgage loan and (as to the alleged improper and "bogus" warranty provided by the Frederics and included by TCB) stated that "M&T has no record of any 'Limited New Home Warranty,' but rather a builders warranty, which is evidenced in the enclosed Purchase Agreement", and M&T declined to refund the Plaintiffs' down payment or to relieve Plaintiffs from their mortgage debt. (Doc. 1 at 53). Plaintiffs again wrote to M&T on July 21 and 24, 2017 regarding the issue and attached a copy of the "Limited New Home Warranty" (of which M&T's representative previously claimed to have no knowledge), but M&T refused to address the Plaintiffs' issues that it considered "investigated and resolved". (*Id*. at 53-54). Plaintiffs also contend that M&T never communicated the contents of the April 20, 2017 letter to Lakeview Loan Servicing, LLC, when it acquired the note and, instead, "force-fit" the Plaintiffs' "situation into the one-size fits all RESPA delinquent mortgage payment matter" and proceeded through the foreclosure process – wrongfully. (Doc. 1 at 52).

On November 3, 2017, M&T sent Plaintiffs a Notice of Default, and on February 22, 2018, foreclosure of the property took place. (*Id*. at 52-53). Plaintiffs allege that M&T (as servicer for the mortgage) did not have the authority to send a Notice of Default or foreclose on Plaintiffs' mortgage, emphasizing that pursuant to Sections 20 and 22 of the Mortgage Agreement Lakeview as the "Lender shall

give notice to Borrower prior to acceleration" and "Lender shall be entitled to collect". (*Id*. at 54). Plaintiffs maintain that M&T's actions constitute wrongful foreclosure and that its "fraudulent misrepresentation was intended to further the conspiracy to defraud while Lakeview remained under the radar." (*Id*. at 55). Plaintiffs further contend "M&T fraudulently misused Lakeview's power of sale given under the Tannehills' mortgage for a purpose of carrying to completion the conspiracy's objective of defrauding the Tannehills by wrongfully foreclosing their loan on February 22, 2018," proximately causing damage to the Plaintiffs. (*Id*. at 57).

In moving to dismiss the claims against it, M&T maintains that (1) Plaintiffs have not articulated sufficient facts to support a conspiracy to defraud, specifically, Plaintiffs have failed to identify coconspirators or an unlawful purpose to the foreclosure and (2) that the claim is barred by Alabama's 2-year statute of limitations. As to Plaintiffs wrongful foreclosure claim, M&T contends (1) that the claim fails as a matter of law, because Lakeview foreclosed upon Plaintiffs' property (not M&T) and (2) that Plaintiffs fail to allege that the power of sale was exercised for any reason other than to secure the debt owed by Plaintiffs. (Doc. 21 at 11-12).

Turning to the evidence of record, the Foreclosure Deed clearly evidences that the Lender, Lakeview Loan Servicing, Inc., foreclosed on Plaintiffs' mortgage, not M&T. (*See* Doc. 1 at 120-122). Also, "the complaint is totally devoid of any allegations that the foreclosure sale was conducted for an improper purpose, or that [M&T or Lakeview] acted with ill will, malice, or ulterior motive in

proceeding with the foreclosure sale. In the absence of allegations that the foreclosure was instituted for an improper purpose, [the plaintiff] has failed to state a claim for wrongful foreclosure under Alabama law." *Wallace v. SunTrust Mortgage, Inc., et al.*, 974 F. Supp. 2d 1358, 1364 (S.D. Ala. 2013). Also, finding persuasive the reasoning of other courts, the undersigned finds that the actual "lender" is not required to send notices of default or foreclosure to the borrower in strict compliance with paragraph 22 of the mortgage agreement, when the mortgage authorizes the servicer to act on behalf of the lender.

For instance, in *Galvin*, the plaintiff challenged the legality of the foreclosure of his mortgage. Amongst his claims was that the received default notice failed to comply with paragraph 22 of the mortgage agreement because it issued from the servicer and not the lender. The district court held:

> None of these alleged deficiencies are borne out by a plain reading of the mortgage. Paragraph 22 does not require the lender to personally send the default notice. As the Galvins acknowledge in their Complaint, SLS was the mortgage servicer and as such was authorized to act on behalf of the lender. *See R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 187 (1st Cir.2006) ("Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan."). . . . Moreover, they are unable to demonstrate any prejudice flowing from the form of the default notice—most significantly, they do not allege that they did not owe the money demanded in the notice.

*Galvin v. U.S. Bank Nat. Ass'n*, No. CIV.A. 14-14723, 2015 WL 1014549, at *4 (D. Mass. Mar. 9, 2015), *aff'd sub nom. Galvin v. U.S. Bank, N.A.*, 852 F.3d 146 (1st Cir. 2017).

While the undersigned has not found caselaw in this Circuit directly on point, it finds sound the reasoning of the First Circuit. Like *Galvin*, the Tannehills

make no argument that they were prejudiced from the default notice, nor do they allege any insufficiencies in the information contained in the notice. Given that Plaintiffs do not argue otherwise, it appears that the default notice specified "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this [the] Security Instrument and sale of the Property. . . ." as required by Paragraph 22 of the Mortgage. (Doc. 1 at 93). Thus, any argument presented by Plaintiffs that the failure to strictly comply with Paragraph 22, in having the lender versus loan servicer send the notice of default, does not constitute a tortious foreclosure sale.

Accordingly, M&T cannot be liable for wrongful foreclosure, and any such cause of action against it must fail.

Plaintiffs conspiracy to defraud claim is subject to Alabama's two-year statute of limitations. Ala. Code 1975 § 6-2-38(1). Under Ala. Code § 6-2-3, the limitations period does not begin to run in a fraud case until the aggrieved party discovers the fact constituting the fraud. To establish that M&T conspired to defraud Plaintiffs, Plaintiffs must establish: "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Maint. Grp.., Inc*, 261 So. 3d 337, 347 (Ala. 2017) (citing *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So.2d 243, 247 (Ala. 2000). Plaintiffs must also meet *Federal Rules of Civil Procedure Rule* 9(b)'s heightened pleading requirements, providing that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake." Rule 9(b). "The purpose of Rule 9(b) is to ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of and to eliminate those complaints filed as a pretext for discovery of unknown wrongs." *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1366 (S.D. Ala. 2013) (quoting *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 221 F.R.D. 582, 585 (S.D. Fla. 2004) (citations and internal quotation marks omitted). "Under well established law, Rule 9(b) is satisfied if the complaint sets forth the following: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Wallace,* 974 F. Supp. 2d at 1366 (internal citations and quotation marks omitted).

The Plaintiffs maintain that "M&T fraudulently misused Lakeview's power of sale given under the Tannehills' mortgage for a purpose of carrying to completion the conspiracy's objective of defrauding the Tannehills by wrongfully foreclosing their loan on February 22, 2018." (Doc. 1 at 57). First, there can be no conspiracy to defraud when there has been no fraud. *See Century Land Dev., L.P. v. FFL Dev., LLC,* 2008 U.S. Dist. LEXIS 33871, *14 (S.D. Fla. 20) (citing *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So.2d 1025, 1027 (Fla. App. 4 Dist. 1992) (stating the "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the plaintiff. An act which does not constitute a basis for an action against one person cannot be

made the basis of a civil action for conspiracy")).  Here, Plaintiffs allege a conspiracy to wrongfully foreclose on their mortgage.  However, as discussed above, the record is void of facts evidencing a wrongful foreclosure.  Thus, finding no fraud occurred in the foreclosure sale, Plaintiffs' claim for conspiracy to defraud also fails.

Second, Plaintiffs' complaint is void of the necessary and specific facts to state a claim.  Instead, the complaint suggests a conclusory claim of a generalized conspiracy.  Namely, Plaintiffs allude to M&T's failure to rescind Plaintiffs' Mortgage (which was arguably fraudulently or negligently acquired), which led to foreclosure of the mortgage, which connects M&T to a conspiracy to defraud. Lacking from this broad sweeping assumption, however, are allegations of an intentional plan between M&T and another person or entity to defraud Plaintiffs. Further lacking are facts showing that M&T acted unlawfully or for an unlawful purpose.  Accordingly, Plaintiffs have failed to plead or respond showing the necessary elements to state a claim for conspiracy to defraud against M&T. Furthermore, all actions taken by M&T (failure to rescind Plaintiffs' loan, failure to investigate or respond to 2017 letters, and service of the November 3, 2017 Notice of Default) are time barred under the state's 2-year statute of limitations.

It is therefore recommended that **M&T's Motion to Dismiss be GRANTED** and the claims asserted against M&T be **DISMISSED**.  (Doc. 21).

e.  Lakeview Loan Servicing, Inc.'s Motion to Dismiss (Doc. 22).

As to Lakeview Loan Servicing, LLC ("Lakeview"), Plaintiffs allege claims of promissory fraud, conspiracy to defraud, breach of fiduciary duty, wrongful foreclosure, and breach of contract. On April 2, 2020, Lakeview filed a Motion to Dismiss the claims against it. (Doc. 22). To date, the Plaintiffs have not responded to the motion, and on June 17, 2020, Defendant Lakeview filed a notice of Plaintiffs' nonresponse and requested that its motion to dismiss be granted. (Doc. 53).

Lakeview has presented evidence that it acquired Plaintiffs' mortgage through a corporate Assignment of Mortgage on October 4, 2017. (Doc. 22-1). Lakeview also acknowledges that on February 21, 2018, it invoked its power of sale rights under the Mortgage and foreclosed upon the real property due to Plaintiffs' failure to satisfy their payment obligations under the loan. (Doc. 1 at 120-22). Lakeview contends that the claims asserted against it fail as a matter of law and/or are barred by the applicable two-year state of limitations.

In support of dismissal of the claims against it, Lakeview argues Plaintiffs have failed to plead sufficient facts showing promissory fraud. In Alabama, a "plaintiff must allege facts showing (1) a false representation; (2) of an existing material fact; (3) that is reasonably relied upon; (4) damage resulting as a proximate cause; (5) that at the time of the misrepresentation, the defendant had the intention not to perform the promised act; and (6) that the defendant had an intent to deceive." *Target Media Partners Operating Co., LLC v. Specialty Mktg. Corp.*, 177 So. 3d 843, 866-867 (Ala. 2013) (internal citation and quotation marks omitted). Review of the complaint shows Plaintiffs' have failed to allege facts sufficient to satisfy the elements of fraud, that is, the "who, what, when, where, and how" facts. *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1366 (S.D. Ala. 2013) (internal

quotation and citation omitted). Specifically, there are no facts showing or suggesting Lakeview made a false representation, nor that Plaintiffs relied on the false representation, or how they were damaged thereby. Nor are there facts suggesting Lakeview had the intention to deceive. Lakeview further asserts the claim is time barred, as the fraud claim (as alleged) is grouped with and asserted against Lakeview, TCB, and the Frederics in the complaint – indicating it relates to the purchase of the property in 2015; thus, the claim was filed over four years later, outside of the statutory window.

Lakeview argues it cannot be liable for a breach of fiduciary duty because mortgagees (like Lakeview) do not owe borrowers a fiduciary duty under Alabama law. *See Selman v. CitiMortgage, Inc.*, Civ. Action No. 12-0442-WS-B, 2013 WL 838193, *10 (S.D. Ala. Mar. 5, 2013) (Identifies "substantial, unbroken line of authority supporting the proposition that Alabama law does not recognize a general fiduciary duty running from a mortgagee to a mortgager."); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110 (11th Cir. 2014) ("Under Alabama law, a mortgage lender does not owe the borrower a general fiduciary duty."). [15]

---

[15]     *See also, Vision Bank v. Lanza,* where this Court, discussing the duty owed by a mortgagee to a borrow, stated:

> Under Alabama law, the relationship of a lender to a borrower generally does not impose a fiduciary duty on the lender. *K & C Dev. Corp. v. AmSouth Bank, N.A.,* 597 So.2d 671, 675 (Ala.1992) ("Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank."). This general rule also applies to the relationship between a mortgagee and mortgagor. *See, e.g., Brabham v. Am. Nat'l Bank of Union Springs,* 689 So.2d 82 (Ala.Civ.App.1996). However, "when a mortgagee forecloses a mortgage pursuant to a power, the mortgagee becomes a trustee of the debtor/mortgagor and is bound to act in good faith and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the mortgagor." *Wood River Dev., Inc. v. Armbrester,* 547 So.2d 844, 847 (Ala.1989). A foreclosing mortgagee owes that duty because "the

Plaintiffs have not pointed to any authority holding differently, nor do Plaintiffs put forth facts showing or suggesting any kind of special relationship between them and Lakeview. Accordingly, Plaintiffs have failed to plead facts sufficient to evidence that a fiduciary relationship existed between the Plaintiffs and Lakeview; thus, Plaintiffs have failed to state a cognizable claim for breach of fiduciary duty.

Lakeview further argues Plaintiffs have failed to sufficiently plead conspiracy to defraud by failing to allege that Lakeview conspired to achieve an unlawful purpose and by failing to identify a coconspirator. *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013) ("The elements of civil conspiracy in Alabama are (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means.") (citations omitted). Lakeview asserts Plaintiffs have failed to provide any factual support that Lakeview conspired to "saddle Plaintiffs with poorly drained Property and inadequate warranties". (Doc. 22 at 10). The most specific allegation provided by Plaintiffs is that Lakeview "enabled the conspiracy, through M&T, to wrongfully foreclose the Tannehills' mortgage on February 22, 2018." (Doc. 1 at 55). Plaintiffs further assert that Lakeview negligently hired and supervised M&T. As Lakeview points out, these allegations, however, mention only negligent and unintentional conduct, not

mortgagee is selling the property, and his interest is diametrically opposed to the interest of the mortgagor, especially if he is the purchaser of the property at the foreclosure sale." *Id.* But the duty to act in good faith is not a general fiduciary duty. *Brabham*, 689 So.2d at 88. Whereas Vision Bank cannot be liable for breaching a duty that it did not have, Defendants' first counterclaim must be dismissed.

*Vision Bank v. Lanza*, No. CIV.A. 10-00628-KD-M, 2011 WL 5190847, at *4 (S.D. Ala. Nov. 1, 2011).

intentional, concerted action. These allegations further lack the elements of a "concerted action", as Plaintiffs allege M&T never communicated their April 20, 2017 letter to Lakeview. Also, as previously discussed in relation to M&T and further discussed below, the record is devoid of evidence that the foreclosure was undertaken for any unlawful purpose; thus, the record lacks evidence that Lakeview participated in a conspiracy to defraud.

As to Plaintiffs claim of wrongful foreclosure, the undersigned expounds that because Plaintiffs have not pled facts suggesting that the property was foreclosed for any reason other than to secure the debt owed by Plaintiffs, the claim fails. "Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012). However, formal elements of a cause of action for "wrongful foreclosure" are not readily laid out in caselaw. Instead, the claim "is an open-ended equitable action rising from the trust relationship between a mortgagor and a mortgagee." *In re Sharpe*, 391 B.R. 117, 152 (N.D. Ala. 2008). The best definition of such a claim is "one where 'a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.'" *Id*. (quoting *Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992)). "Under Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *Id*. at 153.

> Generally the purpose for which the power of sale is given being to
> afford an additional and more speedy remedy for the recovery of the

debt, the mortgagor is by the contract bound to exercise necessary promptness in fulfilling it and cannot complain of a legitimate exercise of the power. If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made. *Wittmeier v. Tidwell,* 147 Ala. 354, 40 So. 963 [ (1906) ], and authorities there cited. Or, as was said in the case of *Castleman v. Knight,* 215 Ala. 429, 110 So. 911 [ (1927) ]: "If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended." *Paint Rock Props. v. Shewmake,* 393 So.2d 982, 983–84 (Ala.1981)."

*Wallace v. SunTrust Mortg., Inc.,* 974 F. Supp. 2d 1358, 1363–64 (S.D. Ala. 2013) (quoting *Jackson,* 90 So. 3d at 171-172) (affirming summary judgment dismissal of the negligent foreclosure claim where the plaintiffs did not argue that the power of sale was exercised for any purpose other than to secure the debt they owed).

Here, Plaintiffs have not alleged in their complaint or any subsequent pleading that Lakeview exercised its power of sale for any purpose other than to secure the debt owed by them, for any ulterior motive, that the power of sale was perverted or used for the mortgagee's or someone else's purpose, or that the mortgagee had an ill motive. *See In re Sharpe,* 391 B.R. at 153 (citing *Garst v. Johnson,* 37 So. 2d 183 (1948). Consequently, Plaintiffs have failed to state a claim for wrongful foreclosure.

Lastly, Lakeview contends that Plaintiffs' breach of contract claim fails because Plaintiffs have not pled and cannot plead facts necessary to support such a claim. To state a breach of contract claim under Alabama law, "a party must establish (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4)

damages." *Harp law, LLC v. LexisNexis*, 196 So. 3d 1219, 1224 (Ala. Civ. App. 2015) (citations omitted). Plaintiffs have alleged a contract with Lakeview in the form of the Mortgage Loan, but Defendant contends Plaintiffs have failed to allege performance under that contract, i.e., timely mortgage payments, and further contend that Plaintiffs have failed to specify how Lakeview breached the contract or how they were damaged thereby. Review of Plaintiffs' Complaint reveals that Plaintiffs clearly articulated their intentions of ceasing mortgage payments, that Plaintiffs did stop making timely mortgage payments, and that Plaintiffs have asserted no direct factual allegations against Lakeview.

Plaintiffs insinuate that Lakeview breached the Mortgage by having M&T send the Notice of Default. As previously discussed, however, service of the pre-foreclosure Notice of Default was not in violation of the Mortgage, since the Mortgage broadly authorized loan servicers, like M&T, to act on behalf of the Lender. *Cf. Galvin*, 2015 WL 1014549, at *4. Notably, Plaintiffs have failed to respond in opposition to Lakeview's Motion to Dismiss and have, thus, provided no facts or argument in support of the cause of action. Accordingly, the undersigned determines that Plaintiffs have failed to carry their burden to overcome dismissal, as their complaint lacks sufficient details, necessary facts, and allegations to establish that Lakeview breached the Mortgage Agreement.

Therefore, for the reasons discussed above, it is recommended that **Lakeview's Motion to Dismiss** be **GRANTED**, as to all claims asserted against it.

## C. Plaintiffs' Motion for Summary Judgment against the Frederics and The Citizens Bank (Docs. 46-47).

On June 1, 2020 Plaintiffs filed a Motion for Summary Judgment against the Frederics and TCB, as to the breach of the Purchase Agreement and Mortgage, respectively. (Docs. 46-47). Both the Frederics and TCB responded in opposition to the motion. (Docs. 59, 63).

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

Plaintiff bears the initial burden of showing: (1) a valid contract existed binding the parties; (2) Plaintiffs' performance under the contract; (3) the

defendants' nonperformance under the contract; and (4) resulting damages. *See Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). Plaintiffs have shown the existence of a valid contract and satisfaction of their performance, but it is unclear if the defendants failed to perform and whether or not Plaintiffs were damaged as a result of the alleged nonperformance.

Plaintiffs allege that the Frederics misrepresented the condition of the property and failed to provide the agreed upon VA one-year warranty. (Doc. 1 at 21-22, 26). Specifically, Plaintiffs claim that the Frederics acknowledge in the executed Real Property Disclosure that the property was constructed according to appropriate codes, regulations, and permits. (Doc. 47 at 63-67). Plaintiffs further allege that the builder, Robert McVay, d/b/a McVay Construction Company, Inc. (McVay) (nonparty), also "assured the Tannehills that everything had been done according to code." (Doc. 47 at 5). However, Plaintiffs subsequently learned that the retaining wall (supporting the driveway) rising from approximately 2 feet to 9 feet tall, lacked the appropriate permit pursuant to International Residential Building Code 2012, and the site plan submitted for the property failed to evidence a retaining wall. (Doc. 47 at 6, 68, 70). Furthermore, Plaintiffs allege that the Frederics provided a "Limited New Home Warranty" instead of a "1 year Builders Warranty" as stipulated by the Purchase Agreement. (Doc. 47 at 58, 76-78). Plaintiffs contend that by letter dated November 15, 2016 that the Frederics refused to provide warranty coverage for the discovered drainage issues and retaining wall defects after McVay refused to correct the purported defects. (Doc. 47 at 8, 84-85).

The Frederics have responded to Plaintiffs' motion and put forth evidence that they provided a builder's warranty, as required by the terms of the contract,

53

and assert that Plaintiffs have failed to show that such warranty was insufficient or noncompliant with the terms of the contract. (Doc. 59 at 6). The Frederics support the sufficiency of the provided builder's warranty with the fact that Plaintiffs were able to acquire VA financing. The Frederics also contend that no evidence exists that they made any misrepresentations regarding the condition of the home, as "[t]he home was new construction and the Frederics did not live in the home for any extended period prior to the sale", and further contend that the Plaintiffs purchased the property "As Is", negating any question of alleged misrepresentations of the property's condition. (*Id*.). Lastly, the Frederics assert that the motion is premature, given that the discovery period in this case has yet to commence.

The record reflects that prior to the purchase of the property, Plaintiffs noticed and inquired about the retaining wall, specifically that the "retaining wall supporting the driveway. . . showed signs of minor seepage that was said to be due to a defective seal at the upper juncture of the driveway and retaining wall allowing rain runoff to get behind tie wall", and McVay advised that his employee, Andres, knew how to seal it. (Doc. 47 at 5). The record also reflects that the Frederics indicated on the Seller Real Property Disclosure that:

- There had never been any past or present drainage or flood problem affecting the property.

- There had never been any significant standing water after heavy rain.

- There were no past or present problems with driveways, . . ., retaining walls on the property . . . due to drainage, flooding, or soil movements.

- There were no improvements constructed without necessary permits.

(Doc. 47 at 64). The form also indicates that the Frederics failed to disclose whether or not any improvements or additions to the property had been constructed in violation of building codes or set back line violations. (*Id*.). Further, the Purchase Agreement between the Frederics and the Plaintiffs indicates that "the agreement is contingent upon Buyer's written acceptance of Seller's Disclosure and return with accepted contract." (Doc. 47 at 58). Taking Plaintiffs facts as true, there is a question as to what the Frederics knew and acknowledged in their property disclosure as it relates to property drainage issues, which the Plaintiffs relied on in executing the Purchase Agreement. (*See* Doc. 1 at 21-22, 26). Also, the record clearly evidences that the Purchase Agreement states that the Frederics are to provide a "1 Year Builders Warranty only not a Home Warranty", yet it is undisputed that a warranty titled "Limited New Home Warranty" was submitted at closing. (Doc. 47 at 58, 76). However, it is unclear at this time if the warranty differs in name only, or if the provided warranty differs in elements essential to a "Builder's Warranty", for instance does the provided warranty only guarantee McVay to fix problems associated with the construction of the home versus all constructed structures – like the retaining wall? Consequently, at this time, there remain questions of material fact as to whether or not the Frederics fulfilled their obligations under the Purchase Agreement and whether or not any potential breach proximately caused damages to the Plaintiffs.

As to TCB, Plaintiffs claim that TCB breached the Purchase Money Mortgage Rider (Mortgage Rider) when it intentionally falsified VA Form 26-1820 prior to the closing on November 17, 2015 so that the home would not be eligible for VA one-year builder's warranty. (Doc. 47 at 9). Stated another way, TCB

breached the Mortgage Rider when it failed to comply with statutes and regulations requiring certification to close the mortgage. (Doc. 47 at 11-12). Plaintiffs have provided a copy of the VA Form 26-1820 submitted by TCB, which incorrectly indicates that the purpose of the automatic guarantee loan is the purchase of a home "previously occupied" (instead of not previously occupied). (Doc. 47 at 95). The form further states that the lender is certifying that the loan is in compliance with VA requirements; however, the form is not executed by the lender. (*Id*. at 96). Plaintiffs argue that according to 38 CFR 36.4340(k) lenders are responsible for certifying to VA that all statutory and regulatory requirements are met, and TCB failed to do so. (Doc. 47 at 97).

TCB has responded to Plaintiffs' motion asserting that it "filled out and/or amended all VA forms required to successfully conduct the closing . . . and transfer the servicing of the loan to Fairway" and that the builder, Robert McVay (d/b/a McVay Construction Company, Inc.) provided Plaintiffs with a One Year Builders Warranty. (Doc. 63 at 2). Specifically, TCB argues that any failure to certify VA Form 26, 1820 was immaterial because Plaintiffs were able to secure VA financing and able to close on the loan. TCB further asserts that the information contained in VA Form 26-1820, which Plaintiffs allege was not certified by TCB, is also contained in VA Form 26-1820A, which was executed. TCB further contends that Plaintiffs' motion is prematurely filed, as discovery has not been initiated.

The undersigned finds that Plaintiffs have failed to carry their burden of showing that TCB breached the Purchase Money Mortgage Rider, causing the damage to Plaintiffs. In short, it is unclear whether the execution of VA Form 26-1820 is essential to a VA loan guarantee or whether Plaintiff was harmed by TCB actions in any way.

Therefore, it is recommended that **Plaintiffs' Motion for Summary Judgment** be **DENIED** at this time. (Doc. 46).

### D. Notice of Criminal Complaint and Defendant's Motion to Dismiss. (Docs. 45, 48).

On June 1, 2020, Plaintiffs filed a "Criminal Complaint" against Brewster. (Doc. 45). The complaint (completed on the District Court's Form AO91) identifies five federal criminal offenses for which James Tannehill accuses Marcus Brewster of being liable. (Doc. 45 at 1-2). The criminal complaint indicates that the United States of America is suing Marcus Brewster for actions complained of in this current civil lawsuit, specifically, conspiring with Kathy Bernheim to falsify, alter and destroy the Tannehills' original 2015 appraisal records and replacing them with a September 20, 2016 report and invoice (without ever conducting another appraisal). (Doc. 45). Brewster responded with a Motion to Dismiss the Criminal Complaint or, in the alternative, Motion to Strike Criminal Complaint (Doc. 48), to which Plaintiffs have objected. (Doc. 54).

The law is clear, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. United States Attorney General,* 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")). "A decision to prosecute is within the United States Attorney's substantial discretion . . . ." *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S. Ct. 1518, 89 L.Ed.2d 916 (1986); *Williams*

*v. University of Alabama Hosp. at Birmingham*, 353 F. App'x 397 (11th Cir. 2009) (affirming the dismissal of a criminal complaint for lack of standing to bring criminal charges). Furthermore, a court is precluded from ordering a prosecution by the United States Attorney based on the separation of powers doctrine and because the determination of whether to commence a prosecution is a process that was not contemplated for the courts to engage in and, therefore, the courts are not equipped to handle a prosecution. *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379-82 (2d Cir. 1973) (affirming the dismissal of a complaint seeking the investigation and prosecution of persons who allegedly violated federal and state criminal statutes). "As a general rule, the courts are not free to interfere with the prosecuting officer's discretionary decision to prosecute crime." *United States v. Spence*, 719 F.2d 358, 361 (11th Cir. 1983). Moreover, a federal court cannot compel state prosecutors to commence a prosecution. *Inmates of Attica Correctional Facility*, 477 F.2d at 382-383; *accord Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986) (holding that the federal courts "have no authority to issue [a writ of mandamus] to direct state courts or their judicial officers in the performance of their duties." (internal quotation marks omitted)).

Thus, to the extent Plaintiff's Notice of Criminal Complaint requests relief of criminal charges, such is unavailable to him in this action. *See Inmates of Attica Correctional Facility*, 477 F.2d at 377, 383. To the extent Plaintiff seeks to prosecute Brewster as a private citizen, he lacks such authority. *Bass Angler's Society v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971) ("[F]irmly established [is the] principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.").

Accordingly, it is recommended that the Criminal Complaint be dismissed as unavailable to Plaintiffs as a matter of law.

### III.    Conclusion.

For these reasons, it is recommended that:

1. **Robert L. Wilkie, Secretary, U.S. Department of Veterans Affairs' Motion to Dismiss** be **DENIED without prejudice,** and **ORDERING** Plaintiffs to perfect service within 20 days of receipt of the District Judge's Order.  (Doc. 41)

2. **Brewster & Associates' Motion to Dismiss** be **GRANTED,** and Defendant **DISMISSED** from this action**.  (Doc. 5)**

3. **TCB's Motion to Dismiss** be **GRANTED** as to the claims of Negligent Supervision, Negligent Hiring, Wantonness, Promissory Fraud, Breach of Fiduciary, Conspiracy to Defraud, and **DENIED as to the Breach of Contract claim**.  (Doc. 9).

4. **Frederics' Motion to Dismiss** be **GRANTED,** thereby dismissing the claims of promissory fraud and conspiracy to defraud, with the **breach of contract claim remaining**. (Doc. 12).

5. **M&T's Motion to Dismiss be GRANTED,** and Defendant be **DISMISSED** from this action.  (Doc. 21).

6. **Lakeview's Motion to Dismiss** be **GRANTED,** and Defendant be **DISMISSED** from this action. (Doc. 22).

7. **Plaintiffs' Motion for Summary Judgment** be **DENIED** at this time.  (Doc. 46).

8. **Brewster & Associates' Motion to Dismiss the Criminal Complaint be GRANTED.** (Doc. 48).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate

judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 25th day of January 2021.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE